UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NATHAN DOHERTY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

JOHN C. PHELAN, Secretary of the Navy, in his official capacity,

Defendant.

---

26-CV-101-LJV
DECISION & ORDER

Before the Court is a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by the defendant, Secretary of the Navy John C. Phelan in his official capacity (the "Navy"), Docket Item 14, as well as several motions filed by the pro se plaintiff, Nathan Doherty, Docket Item 2 (motion for preliminary injunction and writ of mandamus), Docket Item 4 (motion to appoint class counsel), Docket Item 6 (motion for class certification), Docket Item 3 (motion to stay decision on class certification), and Docket Item 8 (motion for electronic filing privileges).

In its motion to dismiss, the Navy argues, among other things, that one of Doherty's claims under 5 U.S.C. § 706(1)—concerning the Navy's failure to issue an interim line of duty ("LOD") determination for his left knee injury—is moot and that this Court therefore lacks jurisdiction to consider it. *See* Docket Item 14-1 at 9-10.[1] For the reasons that follow, this Court agrees and therefore grants the motion to dismiss that

---

[1] Page numbers in docket citations refer to ECF pagination.

claim. The Court reserves decision on the remainder of the motion to dismiss. The Court denies the motion for a preliminary injunction and writ of mandamus for the reasons explained below. And the Court denies without prejudice the remaining motions pending its decision on the Navy's motion to dismiss under Rule 12(b)(6).

## BACKGROUND

### I. FACTS

Doherty "is a submarine-qualified First Class Yeoman in the Navy Reserve with approximately 14 years of qualifying service, including approximately 10 years on active duty." Docket Item 1 ¶ 27. "In March 2024, while serving on active-duty orders in Naples, Italy, [he] sustained a traumatic injury to his left knee during authorized physical training." *Id.* ¶ 40. After MRI imaging, Doherty was diagnosed with "a complete ACL rupture and complex medial meniscus tear, with associated joint pathology." *Id.* ¶ 42.

Doherty's injury "substantially impaired [his] ability to perform military duties and was formally identified as deployment-limiting by Navy medical officials." *Id.* ¶ 43. As a result, he says, Navy regulations—more specifically, section 0224 of the Manual of the Judge Advocate General[2] ("JAGMAN")—"required the immediate issuance of an interim LOD [determination] within seven days." *Id.* ¶ 44. But Doherty says that "[n]o interim LOD was initiated at any time." *Id.*

Several months later, in August 2024, Doherty reported "for pre-deployment processing." *Id.* ¶ 45. Navy physicians found him "Not Physically Qualified (NPQ) to

[2] U.S. Dep't of Navy, Manual of the Judge Advocate General (2023), *available at* https://www.secnav.navy.mil/doni/JagInstructions.aspx.

deploy" due to his knee injury. *Id.* ¶ 46. As a result, the Navy cancelled his mobilization on August 8, 2024, *id.* ¶ 47, and then placed him "in a 'Medical Evaluation' status," *id.* ¶ 49.

Doherty asked the Navy to place him in "MEDHOLD"—that is, to maintain him on active duty so that he could receive medical treatment for his left knee. *Id.* ¶¶ 63-64. But the Navy denied Doherty's request for MEDHOLD status because the aggravation of his left knee injury had occurred during a previous deployment. *Id.* ¶¶ 65-68. To make bad matters worse, on December 8, 2024—three days before Doherty was scheduled for surgery to repair the ACL and meniscus in his left knee, *id.* ¶ 62—he was released from active duty, *id.* ¶ 73. As a result, Doherty's December 11 surgery was canceled. *Id.* ¶ 87. About three months later, however, the Navy approved Doherty's LOD health care benefits for his knee injury with a retroactive effective date of April 21, 2024.[3] Docket Item 1-2 at 107.

Doherty also alleges that he suffered a "service-connected" back injury. Docket Item 1 ¶¶ 55-56. And he says that he "explicitly requested that the Navy initiate a [LOD] inquiry for his service-connected back condition, which had been aggravated by his active service." *Id.* ¶ 56. But, Doherty alleges, "Navy medical personnel . . . informed [him] that they could process only one injury at a time," and he therefore did not receive the rights and benefits to which he was entitled. *Id.* ¶¶ 57-60.

---

[3] Moreover, the government represents that its "counsel personally spoke with Doherty on March 10, 2026, and Doherty confirmed that he did, in fact, have knee surgery in or about March 2025." Docket Item 14-1 at 4 n.4.

## II. CLAIMS

Doherty raises two claims under the Administrative Procedure Act ("APA"). First, he seeks relief under 5 U.S.C. § 706(1), which allows a court to "compel agency action unlawfully withheld or unreasonably delayed." More specifically, Doherty argues that the Navy failed "to issue an interim LOD determination 'within seven days' of [his] presenting with a potentially unfitting condition," as required by JAGMAN § 0224. Docket Item 1 ¶ 106. He also says that "10 U.S.C. § 12301(h) imposes a nondiscretionary, mandatory duty to 'order to or retain on' active duty any reservist requiring medical evaluation or treatment for a service-connected condition," but "[t]he Navy failed to perform this duty, releasing [him] three days prior to his medically necessary surgery." *Id.* ¶ 107.

Second, Doherty seeks relief under 5 U.S.C. § 706(2)(A), which allows a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Doherty's section 706(2) claim has two components. First, he says that the Navy's denial of his MEDHOLD request violated the terms of 10 U.S.C. § 12301(h). Docket Item 1 ¶ 110; *see* Docket Item 2 at 28, 31. Second, he says that "[t]he Navy refused to initiate LOD inquiries" regarding his back condition as required by law. Docket Item 1 ¶ 111.

## DISCUSSION

## I. MOTION TO DISMISS UNDER RULE 12(B)(1)

The Court must consider any challenges to its Article III jurisdiction before resolving any other issues. *See Butcher v. Wendt*, 975 F.3d 236, 242 (2d Cir. 2020) (explaining that under the Supreme Court's decision in *Steel Co. v. Citizens for a Better*

*Environment*, 523 U.S. 83 (1998), federal courts cannot "assume hypothetical jurisdiction over questions of Article III jurisdiction"). Here, the Navy argues that Doherty's claim under section 706(1) for the failure to issue an interim LOD determination concerning his knee injury is moot. *See* Docket Item 14-1 at 10 ("In fact, Doherty admits that the Navy did provide him with a [LOD] determination, albeit '350 days' later than he wished. Since the Navy has . . . already issued him a [LOD determination] for his left knee, Doherty's claim is moot." (internal citations omitted)). This Court agrees.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)); *see also Srour v. New York City*, 117 F.4th 72, 81 (2d Cir. 2024) (explaining that "[u]nder Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action" (quoting *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013))). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint"—as is the case here—"[t]he task of the district court is to determine whether the [p]leading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (citation and internal quotation marks omitted).

Doherty seeks relief under APA section 706(1), which allows a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). More

specifically, Doherty says that "JAGMAN § 0224 imposes a nondiscretionary, mandatory duty on the Navy to issue an interim LOD determination 'within seven days' of a reservist presenting with a potentially unfitting condition," but "[t]he Navy failed to perform this discrete, mandatory act." Docket Item 1 ¶¶ 106-07.

Under JAGMAN § 0224(a),

> [Commanding Officers] must issue "interim" line of duty determinations within seven days of being notified that a reservist not on the active duty list has an incapacitating injury or illness incurred or aggravated while on active duty, including leave and liberty therefrom, active duty for training, inactive duty training, or travel to or from such duty. This interim determination is intended to ensure that the reservist's incapacitation pay can be started without delay. If the final line of duty/misconduct determination is adverse to the member, immediate action must be taken to stop incapacitation benefits[.]

In other words, the purpose of the interim LOD determination is so that there will be no gap in the servicemember's pay pending the final determination.

Here, however, that ship has sailed. Doherty "seeks only declaratory and injunctive relief" in connection with LOD benefits; he explicitly "does not seek money damages." Docket Item 1 ¶¶ 7-8. But the Navy already has issued a final LOD determination regarding Doherty's knee, granting him LOD health benefits for that injury. *See* Docket Item 1-2 at 107. And the Court fails to see how it can order the Navy to retroactively issue an interim order when a final order already has been issued favorably to Doherty.

Simply put, this Court cannot order the Navy to do something it already has done. Therefore, even if the Navy took longer than it should have to take that action—and even if Doherty is right that the Navy should have issued an interim LOD while he was waiting for a final decision—he now has that final decision in his favor. And so there is no further relief he can get under section 706(1). *Cf. Srour*, 117 F.4th at 81

(finding that claim related to permit denial was moot because even if "the original denial of [the plaintiff]'s permit application was unlawful, . . . his injury of being denied a permit to possess rifles and shotguns . . . ha[d] been remedied" by later permit grant).[4]

Doherty tries to avoid this result by suggesting that the Navy's belated LOD determination is a "voluntary cessation"—an exception to the mootness doctrine. Docket Item 18 at 5-6; *see Srour*, 117 F.4th at 81. But as the government observes, Docket Item 19 at 2-3, that doctrine applies only to a defendant's conduct *after* the filing of a lawsuit. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (explaining that under voluntary cessation doctrine, "a defendant cannot automatically moot a case simply by ending its unlawful conduct *once sued*" (emphasis added)). Here, by Doherty's own admission, the Navy issued its LOD determination more than ten months before Doherty filed suit. *See* Docket Item 18 at 6.

Doherty also suggests that this Court has jurisdiction because his claim is "capable of repetition, yet evading review"—another mootness exception. Docket Item 18 at 6; *see Srour*, 117 F.4th at 81. More specifically, he says that "[i]ndividual mootness does not extinguish class-wide claims where individual claims are inherently transitory and the challenged conduct would otherwise evade appellate review." Docket Item 18 at 6. But that exception applies only when the named plaintiff had a live claim at the time he filed the complaint and moved for class certification. *See Jobie O. v. Spitzer*, 2007 WL 4302921, at *7 (S.D.N.Y. Dec. 5, 2007) (explaining that "even if the

[4] To the extent Doherty thinks that he is entitled to a LOD determination dating back to an earlier date, he may be able to seek relief under a provision other than APA section 706(1), which allows a court only to "compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1).

named plaintiff's claim has become moot, a decision on class certification can relate back to the filing of the complaint," but "this 'relation back' doctrine ordinarily applies where the named plaintiff's claims become moot after the named plaintiff moves for class certification but before the class is certified") (emphasis omitted). Here, Doherty's claim already was moot when he filed the complaint.

Thus, the Court finds that Doherty's first cause of action related to the Navy's failure to issue an interim LOD determination for his knee is moot and therefore grants the Navy's motion to dismiss under Rule 12(b)(1) as to that claim. The Court reserves decision on the remainder of the motion to dismiss under Rule 12(b)(6)—which does not implicate jurisdictional issues—and will decide that part of the motion in due course.

## II. MOTION FOR A PRELIMINARY INJUNCTION

Doherty has moved for a "preliminary injunction and writ of mandamus." Docket Item 2 at 1 (capitalization and emphasis omitted). More specifically, he requests "an order compelling the Secretary of the Navy and his subordinates to" do the following:

> 1. Immediately issue an Interim [LOD] determination for all of [his] potentially unfitting conditions pursuant to JAGMAN § 0224;
>
> 2. Retroactively place [him] on active duty orders pursuant to 10 U.S.C. § 12301(h) effective April 21, 2024;
>
> 3. Immediately provide comprehensive medical evaluations for all service-connected conditions identified in the [c]omplaint;
>
> 4. Convene a Medical Evaluation Board (MEB) for all unfitting conditions.

Docket Item 2 at 1-2 (emphasis omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Monserrate v. N.Y. St. Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). It "is an equitable remedy and an act of

discretion by the court." *Am. Civ. Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Trump v. Deutsche Bank AG*, 943 F.3d 627, 640 (2d Cir.), *cert. granted*, 589 U.S. 1120 (2019) (quoting *Winter*, 555 U.S. at 20). Moreover, the Second Circuit has instructed that a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo—"should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "[T]o satisfy the irreparable harm requirement, [the plaintiff] must demonstrate that absent a preliminary injunction [he] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (alteration omitted) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

Doherty says that here, "[t]he irreparable harm is concrete: a disability determination issued on a defective LOD record propagates through VA adjudications,

future boards, and personnel systems in ways no monetary award repairs." Docket Item 18 at 7. But as noted above, most of what Doherty wants fixed already has been. And to the extent Doherty's request for an injunction applies to claims that are not moot, that vague description falls far short of establishing particular harm that is "actual and imminent" as is required for the extraordinary remedy of a mandatory preliminary injunction. *See Faiveley*, 559 F.3d at 118.

Doherty also alleges that he has "been unable to access military treatment for [his] back" because the Navy "refused to process the back injury concurrently with the knee." Docket Item 1-2 at 45. But even if that is true, it is unclear why Doherty could not now seek an LOD determination regarding his back. *See* Docket Item 19 at 6 (the Navy's explaining that Doherty "had the opportunity beginning in March 2025 to submit his back condition for review once he was approved for a line of duty determination on his knee").

Doherty also claims that "[t]he irreparable harm is evidentiary [sic]" and that "[t]he passage of time without military medical evaluation destroys the contemporaneous documentation [Department of Veterans Affairs] adjudicators and [Disability Evaluation System] evaluators require." Docket Item 18 at 9; *see also* Docket Item 2 at 36. But the aging of evidence is an issue in nearly every case, and absent some exceptional circumstance, it is not grounds for a preliminary injunction.

Finally, Doherty says that "[f]orcing a member to 'self-manage' a complex recovery from Buffalo without active-duty pay or travel support constitutes a financial and physical burden that no retroactive pay can fully restore." Docket Item 2 at 36. But the crux of this harm is financial, and it is well settled that financial losses do not

constitute irreparable harm. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90-91 (1974) ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 142 (N.D.N.Y. 2021) ("neither the loss of employment nor economic loss constitutes irreparable harm"); *Johnson v. NYS Off. of Alcoholism & Substance Abuse Servs.*, 2018 WL 11380718, at *3 (S.D.N.Y. Jan. 8, 2018) (holding that loss of health insurance generally is not irreparable harm).

Doherty therefore has not met the high bar for demonstrating irreparable harm. As a result, the Court need not decide whether he has made a "clear showing" that he will prevail on the merits. The Court notes, however, that the Navy has moved to dismiss for failure to state a claim under Rule 12(b)(6), *see* Docket Item 14, and the Court will consider that motion in due course.

## III. MOTION FOR A WRIT OF MANDAMUS

A writ of mandamus is an available remedy only when the plaintiff has "no other adequate remedy available." *See Jan v. Mayorkas*, 2025 WL 964092, at *2 (E.D.N.Y. Mar. 31, 2025). That is not the case here, as Doherty has raised claims under the APA.

Moreover, "[a] district court's jurisdiction under the mandamus statute is limited to actions 'seeking to compel the performance of a nondiscretionary duty.'" *Rahman v. Jaddou*, 2022 WL 6593589, at *2 (2d Cir. Oct. 11, 2022) (quoting *Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004)). As the defendants correctly note, "the only possible nondiscretionary duty that [Doherty says] the Navy arguably had to perform was the interim line of duty determination with respect to [Doherty's] left knee injury." Docket Item 14-1 at 21. But as explained above, *see supra* Section I, that claim is moot.

The Court therefore denies Doherty's motion for a writ of mandamus as well.

## IV. REMAINING MOTIONS

### A. Class Claims

Doherty also moves to appoint class counsel, Docket Item 4; moves for class certification, Docket Item 6; and, as an alternative, asks this Court to stay its decision on class certification instead of dismissing the class allegations, Docket Item 3. As the Court noted above, the Navy has moved to dismiss Doherty's remaining claims under Rule 12(b)(6). Docket Item 14. If that motion is successful, the class claims also will be dismissed. *See In re Veon Ltd. Secs. Litig.*, 2021 WL 930478, at *6 (S.D.N.Y. Mar. 11, 2021) (explaining that "[f]or each claim asserted in a class action, there must be at least one class representative (a named plaintiff or a lead plaintiff) with standing to assert that claim" and "[c]laims for which the class representatives do not have standing must be dismissed" (citation and internal quotation marks omitted)). Thus, the Court denies without prejudice Doherty's motions related to the class claims pending this Court's decision on the remainder of the motion to dismiss. If the Court denies the motion to dismiss, Doherty may renew his motions regarding the class claims.

### B. Electronic Filing Privileges

Doherty also requests electronic filing privileges. Docket Item 8. The Federal Rules of Civil Procedure provide that a pro se party "may file [documents] electronically only if allowed by court order or by local rule." Fed. R. Civ. P. 5(d)(3)(B)(i). The Western District of New York Local Rules of Civil Procedure incorporate by reference the Court's CM/ECF Administrative Procedures Guide, which, in turn, sets the requirements and provides the procedures for electronic filing. *See* Loc. R. Civ. P. 5.1.

The Administrative Procedures Guide provides that "[t]ypically only registered attorneys, as Officers of the Court, will be permitted to file documents electronically." W.D.N.Y. Administrative Procedures Guide for Electronic Filing, amended October 2022. But the Administrative Procedures Guide allows the Court, "at [its] discretion, [to] grant a pro se litigant who demonstrates a willingness and capability to file documents electronically[] permission to register to do so." *Id.*

The Court declines to exercise its discretion to grant Doherty electronic filing privileges—at least for now. As noted above, the Navy's motion to dismiss under Rule 12(b)(6)—which could be dispositive of the case—remains pending. *See Miller v. Sacramento City Unified Sch. Dist.*, 2021 WL 3883916, at *2 (E.D. Cal. Aug. 31, 2021) (denying request for electronic filing privileges at motion to dismiss stage), *report and recommendation adopted*, 2021 WL 4804135 (E.D. Cal. Oct. 14, 2021). Doherty's motion for permission to file electronically therefore is denied without prejudice. If the Court denies the Navy's motion to dismiss, Doherty may renew his motion for electronic filing privileges.

## CONCLUSION

For the reasons explained above, the Court GRANTS IN PART the Navy's motion to dismiss, Docket Item 14. More specifically, the Court finds that insofar as Doherty's first cause of action relates to the Navy's failure to issue an interim LOD determination for his knee, that claim is moot, and the Court therefore grants the motion to dismiss under Rule 12(b)(1) as to that claim. The Court reserves decision on the remainder of the motion to dismiss and will issue a subsequent decision in due course. The Court DENIES Doherty's motion for a preliminary injunction and writ of mandamus,

Docket Item 2, and DENIES WITHOUT PREJUDICE his motions to appoint class counsel, Docket Item 4; for class certification, Docket Item 6; to stay decision on class certification, Docket Item 3; and for electronic filing privileges, Docket Item 8.

SO ORDERED.

Dated: September 16, 2026
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE